UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

VANESSA BARCELOS,
    Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner,
Social Security Administration,
    Defendant.

C.A. No. 13-238-M-LDA

## MEMORANDUM AND ORDER

JOHN J. McCONNELL, JR., United States District Judge.

Plaintiff Vanessa Barcelos seeks judicial review of the final administrative decision of the Commissioner of Social Security denying her claim for Social Security Disability Benefits ("SSDI"). (ECF No. 1.) She contends that the Administrative Law Judge ("ALJ") erred in two ways: (1) by not finding her emotional impairments to be "severe" during the relevant time period; and (2) by not affording controlling weight to the opinion of one of her treating physicians. (ECF No. 9.) After a thorough review of the record and the briefing in this matter, this Court finds that Ms. Barcelos has not met her burden to show that the ALJ's decision is unsupported by substantial evidence. Therefore, the Commissioner's decision is affirmed.

## I. BACKGROUND

Prior to her claimed disability, Ms. Barcelos, who has a GED, worked as a machine operator and mail clerk. (Tr. at 41, 161-62.)[1] She asserts that she stopped working in 2003 because she was involved in a car accident while pregnant and subsequently became anxious about driving and going to work. *Id.* at 43, 148.

---

[1] "Tr." refers to the "Transcript of Proceedings" filed in this case.

Since her car accident, Ms. Barcelos has suffered from generalized anxiety disorder. *Id.* at 222-23. In 2007, she began outpatient treatment at Butler Hospital for anxiety and depression. *Id.* at 426-32. Ms. Barcelos' physicians have changed over time: in 2007 it was Dr. Austin Yip; in 2008 it was Dr. Natalie Lester; and in 2012 it was Dr. Amy Halt. *Id.* at 383-88, 414-16. Each of these doctors, to varying degrees, diagnosed and pharmacologically treated Ms. Barcelos for general anxiety and depression. *See id.* At various times throughout this period, her condition either slightly improved or slightly worsened. *See id.*

Ms. Barcelos filed for SSDI benefits in 2010 when she was 29 years old, alleging that she has been unable to work since April 1, 2009 because of her depression and anxiety.[2] (ECF No. 9 at 4.) She acquired sufficient quarters of coverage to remain insured through June 30, 2009.[3] (Tr. at 156.) The Commissioner denied her claim initially on June 3, 2010 and again upon reconsideration on October 5, 2010. *Id.* at 20. Ms. Barcelos then requested a hearing before an Administrative Law Judge (ALJ). *Id.* at 97. The ALJ held a hearing on October 19, 2011 and determined that Ms. Barcelos was not disabled under §§ 216(i) and 223(d) of the Social Security Act and therefore not entitled to SSDI benefits. *Id.* at 20, 36-72.

At the hearing, the ALJ received testimony from Ms. Barcelos and from a vocational expert, Ms. Ruth Baruch. *Id.* at 41, 63. The ALJ also received a treating source questionnaire from Dr. Amy Halt, M.D., and reports from non-examining state agency witnesses JoAnne Coyle, Ph.D. and Michael Slavit, Ph.D. *Id.* at 336-49, 447, 648-51. Relevant medical evidence was also received, including Ms. Barcelos' complete medical records.

---

[2] Although at the Commission she also set forth a claim for certain physical impairments, on this appeal she is solely pressing her claim for "emotional impairments." (ECF No. 9 at 7.)

[3] This period from April 1, 2009 through June 30, 2009 is therefore the relevant period where Ms. Barcelos must establish disability. (Tr. at 20.)

2

The ALJ concluded that Ms. Barcelos' anxiety and depression were non-severe because they did not "cause more than a minimal limitation in [her] ability to perform basic, competitive work activity." *Id.* at 22. The ALJ then found that she had a residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b).

The Appeals Council upheld the denial of her claim (Tr. at 5-7) and Ms. Barcelos filed an action in this Court seeking review of the denial. (ECF No. 1.) Ms. Barcelos filed a Motion to Reverse the Decision of the Commissioner (ECF No. 9) and the Commissioner moved to affirm the decision. (ECF No. 11.)

## II. STANDARD OF REVIEW

This Court's review of an ALJ's findings and conclusions is limited: "We must uphold a denial of social security disability benefits unless 'the Secretary has committed a legal or factual error in evaluating a particular claim.' The Secretary's findings of fact are conclusive if supported by substantial evidence." *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) (quoting *Sullivan v. Hudson*, 490 U.S. 877, 885 (1989)).

"Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). If the substantial evidence standard is met, factual findings are conclusive even if the record "arguably could support a different conclusion." *Irlanda Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 770 (1st Cir. 1991) (citing *Rodriguez Pagan v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987)). This Court must avoid reinterpreting the evidence or otherwise substituting its own judgment for that of the Commissioner. *See Colon v. Sec'y of Health & Human Servs.*, 877 F.2d 148, 153 (1st Cir. 1989). The resolution of conflicts in the

evidence is for the Commissioner, not the courts. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981) (citing *Richardson*, 402 U.S. at 399).

## III. APPLICABLE LAW

The ALJ must follow a five-step sequential evaluation process in evaluating a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is engaged in substantial gainful activity ("SGA"), she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any medically determinable impairment or combination of impairments, which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden of proving step five. *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 7 (1st Cir. 1982).

In considering whether a claimant's physical and mental impairments are severe enough to qualify for disability, the ALJ must consider the combined effect of all the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). In calculating a claimant's RFC, the ALJ must consider all of the claimant's impairments, including impairments that are non-severe. 20 C.F.R. § 404.1520(e).

## IV. DISCUSSION

### A. The ALJ's Findings on Severity

Ms. Barcelos challenges the ALJ's finding that her anxiety and depression are non-severe impairments. (ECF No. 9 at 3.) She claims that the ALJ erred by not considering the "totality of the evidence" in the medical record from 2007 to 2011 and by over-relying on Global Assessment of Functioning ("GAF") scores to make his determination. *Id.* at 11-12. She argues that, as a result of the ALJ's error, the findings on severity are not supported by substantial evidence. *Id.* at 3. Her contention is that "one cannot rely on one or two treatment notes during [the relevant time period] to paint a broad generalization as to [her] overall functioning during that time span. . . . Rather, [the ALJ] should have looked at the entirety of the evidence, which supports a finding that Ms. Barcelos, although she may have had some response to treatment, continued to struggle with severe limitations from her anxiety and depression during the period in question . . ." *Id.* at 11-13.

The Commissioner responds that Ms. Barcelos' severity argument is moot because the ALJ found certain of her physical impairments to be severe and continued on to the next steps of the sequential evaluation. (ECF No. 11 at 8.) In addition, the Commissioner sets forth the medical evidence that the ALJ used to support his conclusion. *Id.* at 5-7.

This Court agrees with the Commissioner that the ALJ's findings regarding the severity of her emotional impairments are supported by substantial evidence. To determine severity, the ALJ considered the four broad functional areas, known as the "Paragraph B" criteria, that are set forth in the regulations for evaluating mental disorders (20 C.F.R. Part 404, Subpart P, App. 1). (Tr. at 23.) In the first functional area, "activities of daily living," Ms. Barcelos had mild limitation. *Id.* "She gets out three times a day. She walks or drives a car. She is able to go out

5

alone. [She] is able to shop in stores with her husband." *Id.* In the second functional area, "social functioning," Ms. Barcelos had mild limitation. *Id.* "[She] reported that she was doing well . . . She was responding well to medications. Her [GAF] scores are in the mid-60s, indicating some difficulty in social or occupational functioning but generally functioning pretty well with some meaningful interpersonal limitations." *Id.* In the third functional area, "concentration, persistence or pace," the ALJ again found only mild limitation. *Id.* "Mental status examinations in 2009 are mostly within normal limits. Generally thought processes and content are intact. Memory is intact." *Id.* In the fourth functional area, "episodes of decompensation," Ms. Barcelos had no episodes. *Id.* "During the relevant period, she generally described herself as 'doing well' with reduced anxiety." *Id.* at 23-24.

The ALJ's assessment of the "Paragraph B" criteria does not rely strictly on evidence from the relevant time period. *Id.* at 23. In fact, Ms. Barcelos did not see a doctor for her emotional impairments between April 1, 2009 and June 30, 2009. *Id.* at 382-432, 601-627. In cases such as this, where the evidence "lacks precision and focus in light of the narrow relevant time period," an ALJ may use evidence from the surrounding time period to draw conclusions regarding the relevant time period. *See Carillo Marin v. Sec'y of Health & Human Servs.*, 758 F.2d 14, 16 (1st Cir. 1985). In this case, because there is no medical evidence relating to any emotional impairments during the relevant time period, the ALJ looked at mental health evaluations from the surrounding time period. (Tr. at 23.) Specifically, the ALJ focused on the outpatient hospital records from Butler Hospital dated January 13, 2009 – July 8, 2010.[4] *Id.*

Throughout this time period, Dr. Natalie Lester, a treating psychiatrist, describes Ms. Barcelos as having a linear, organized, goal-oriented thought process (*Id.* at 397, 399-400,

---

[4] These dates span the entire period of time that Ms. Barcelos was treated by Dr. Natalie Lester at Butler Hospital. They overlap the relevant time period.

6

403, 406), being in a good mood (*Id.* at 399-400, 406), having an improvement in her anxiety symptoms (*Id.* at 393, 401, 403), and as "doing well." *Id.* at 400-01. Although there appears to have been a worsening of symptoms in the spring of 2010, on June 8, 2010 Dr. Lester noted an overall improvement that continued until termination of treatment. *Id.* at 393, 396-99. On two occasions, she noted that her goal is for Ms. Barcelos to return to work. *Id.* at 392, 396. Dr. JoAnne Coyle reviewed Dr. Lester's notes and opined that Ms. Barcelos' impairments were non-severe. *Id.* at 336-349. In his decision, the ALJ concluded:

> Overall, the claimant's allegations as to symptom severity and resulting functional limitations are not supported by the evidence of record to the degree alleged. As detailed previously, there is little evidence prior to the date last insured, but the evidence that does exist reveals only modest clinical signs and objective findings. No treating or examining source assigned medical restrictions or indicated functional limitations that would preclude gainful employment. . . . She failed to exhibit clinical signs of any significant defect in the ability to function, which does not support her allegations at Hearing that she requires assistance with virtually all daily activities . . . . Accordingly, the undersigned finds that the claimant's allegations are not entirely credible.

*Id.* at 28.

The ALJ also properly considered GAF scores in his determination. An ALJ does not err by considering a claimant's GAF score as long as it is considered along with the record as a whole and the evidence is weighed in its totality. *See Resendes v. Astrue*, 780 F. Supp. 2d 125, 138-39 (D. Mass. 2011). It is clear from the ALJ's report that Ms. Barcelos' GAF scores constituted an element of his determination, but they were not the sole factor. (Tr. at 23.) Moreover, Ms. Barcelos' GAF scores, which were generally in the mid-60's, indicated that she exhibited "some mild symptoms," but was "generally functioning pretty well." *Id.* These scores are consistent with the other relevant medical evidence in the record, which demonstrates that she was "doing well." *Id.* at 400-01.

7

Ms. Barcelos also argues that "the severity step is a 'de minimis standard' which is 'designed to do no more than screen out groundless claims.'" (ECF No. 9 at 12.) This "de minimis" standard applies when the ALJ terminates, or "screen[s] out" a claim at step two. *Lisi v. Apfel*, 111 F. Supp. 2d 103, 110 (D.R.I. 2000). Here, however, the ALJ did not terminate the sequential evaluation at step two; he continued on to complete the full evaluation because he found that some of her physical impairments were severe. (Tr. at 22.) In other words, the ALJ determined that the claim was not groundless, but that only some of her claimed physical impairments, and none of her emotional impairments, were severe. *Id.*

Even when an ALJ finds an impairment to be non-severe at step two, that impairment is still considered throughout the rest of the sequential evaluation. 20 C.F.R. § 404.1520(e). Accordingly, in this case, the ALJ factored in Ms. Barcelos' emotional impairments when he determined that she retained the ability to perform light, unskilled work and was therefore not disabled. (Tr. at 26, 30.) For example, at step four, "[the ALJ] considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* at 26. Then, at step five, the ALJ accounted for Ms. Barcelos' mental impairments in a hypothetical presented to the vocational expert, Ruth Baruch. *Id.* at 68. He concluded that "[t]he evidence of record indicates that the claimant's impairments would not prevent her from working at a job consistent with the [RFC] as found herein." *Id.* at 27. He noted that even if the claimant's mental impairments were severe, she could still perform past work and other work. *Id.* at 30 n. 3. This clarification should hopefully

allay Ms. Barcelos' concern that the ALJ found that she was "free from impairment" once her mental impairments were found non-severe.[5]

### B. Controlling Weight of the Treating Physician

Ms. Barcelos claims that the ALJ erred by not affording controlling weight to the opinion of Dr. Amy Halt, M.D., a treating physician. (ECF No. 9 at 13.) She argues that Dr. Halt's opinion is valid as to the relevant time period because it is based on the full medical record and because her opinion is consistent with other substantial evidence in the record. (ECF No. 9 at 14.) Ms. Barcelos contends that "the totality of the record supports a finding that Dr. Halt's opinion is well founded, well researched and should be applied to the relevant time period." *Id.* The Commissioner counters that Dr. Halt's opinion was properly discounted because it conflicts with the record and postdates the relevant time period by over two years. (ECF No. 11 at 10-11.) According to the Commissioner, Ms. Barcelos is essentially asking this Court to reweigh the evidence, which is impermissible under the standard of review. *Id.* at 10.

In determining the severity of Ms. Barcelos' mental impairments, the ALJ gave little weight to Dr. Halt's opinion. (Tr. at 25.) Dr. Halt completed a treating source questionnaire on September 25, 2011 after treating Ms. Barcelos for approximately one year. (Tr. at 648-51.) She diagnosed Ms. Barcelos with major depressive disorder, a generalized anxiety disorder, and an obsessive-compulsive disorder. *Id.* at 648. She also made findings of noticeable psychomotor

---

[5] "Doing 'well' during a specific session does not undermine that Ms. Barcelos was suffering from an overall anxiety or affective disorder. Such a condition need not render the same level of impairment each and every day to still be overall disabling. A thorough reading of the record makes it clear that Ms. Barcelos did have some response to treatment but never achieved full relief from her conditions. To say that her impairment was not 'severe' during the period at issue is wrong. Feeling her anxiety was 'much improved' is not the same as being free from impairment. . . . Surely, this claim is not groundless. . . . This supports a finding that there was still the presence of an anxiety disorder and affective disorder during the relevant time period." (ECF No. 9 at 11-12.)

slowing, slowed speech, noticeable fatigue, an anxious, depressed affect, constricted reactivity, and distractability at times. *Id.* at 649. She assigned Ms. Barcelos a GAF score of 50. *Id.* at 648.

In contrast, the ALJ gave substantial evidentiary weight to the opinions of Dr. JoAnne Coyle, Ph.D., a state agency psychological consultant, and Dr. Michael Slavit, Ph.D., a state agency physician. *Id.* at 25, 336-49, 447. Dr. Coyle's psychiatric review technique was treated as expert opinion evidence of a non-examining source. *Id.* at 25. Dr. Coyle examined Ms. Barcelos' medical record and found that, during the relevant period, Ms. Barcelos had an affective disorder in remission and an anxiety-related disorder. *Id.* at 336. She opined that Ms. Barcelos' mental impairments were non-severe. *Id.* Dr. Slavit reviewed all of the evidence and affirmed Dr. Coyle's assessment, stating that the outpatient notes from the relevant time period do not reveal severe impairment. *Id.* at 447.

Medical opinions from treating sources are generally given "more weight" because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2). According to the regulations, a treating source's opinion is given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record. *Id.* Conversely, if "a treating doctor's opinion is inconsistent with other substantial evidence in the record, the requirement of 'controlling weight' does not apply." *Id.*

When a treating source's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on certain factors set forth in the regulations. 20 C.F.R. §§ 404.1527(c), 416.927. The factors are: (1) the "[l]ength of the treatment relationship and the frequency of examination," 20 C.F.R. § 404.1527(c)(2)(i); (2) the "[n]ature and extent of the treatment relationship," 20 C.F.R. § 404.1527(c)(2)(ii); (3) the supportability of the opinion, 20 C.F.R. § 404.1527(c)(3); (4) the consistency of the opinion "with the record as a whole," 20 C.F.R. § 404.1527(c)(4); (5) the specialization of the source, 20 C.F.R. § 404.1527(c)(5); and (6) "[o]ther factors," which include "the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in [the claimant's] case record . . . ." 20 C.F.R. § 404.1527(c)(6). "If the ALJ finds, as he may, that any treating physician's opinion is not credible, then he must comply with the regulations by explicating his grounds." *Nguyen v. Chater*, 172 F.3d 31, 36 (1st Cir. 1999). The ALJ's judgments on such matters should be given substantial deference, provided that his opinion clearly states specific reasons for reaching his conclusion. *Resendes*, 780 F. Supp. 2d at 136-37.

This Court agrees with the Commissioner that the ALJ has committed no reversible error in his decision to give Dr. Halt's opinion little weight. First, the ALJ noted that "Dr. Halt only began to see the claimant after her date last insured." (Tr. at 25.) Therefore, Dr. Halt was not a "treating source" during the relevant time period in the sense that she did not possess a detailed or unique perspective on Ms. Barcelos' condition during that time. *See* 20 C.F.R. § 404.1527(c)(2). Dr. Halt's opinion is essentially no more informed than the opinions of

Dr. Coyle or Dr. Slavit with regard to the relevant time period because all three opinions are based on the same medical evidence.

Having determined that Dr. Halt was not a treating source during the relevant time period and that her opinion was therefore not entitled to controlling weight, the ALJ correctly went on to consider the remaining factors of 20 C.F.R. § 404.1527(c)(2). The ALJ reasonably concluded that Dr. Halt's opinion was entitled to little weight because it was inconsistent with the other evidence in the record. (Tr. at 25.) Specifically, the ALJ stated that during the period at issue, "the record indicated that . . . the claimant was doing well with prescribed treatment. Her GAF scores are consistently in the mid-60s, indicating only slight impairment." *Id.* Dr. Halt's opinion was also inconsistent with both Drs. Coyle and Slavit, who each examined the same evidence and concluded that Ms. Barcelos' mental impairments were non-severe. By explaining his reasoning, the ALJ met the requirements of 20 C.F.R. § 404.1527.

## V. CONCLUSION

Therefore, Ms. Barcelos' Motion to Reverse (ECF No. 9) is DENIED and the Commissioner's Motion to Affirm (ECF No. 11) is GRANTED.

IT IS SO ORDERED.

/s/ John J. McConnell, Jr.

John J. McConnell, Jr.
United States District Judge
July 31, 2014